**UNITED STATES of America,**
**Plaintiff,**

v.

**H. Medill SARKISIAN, Defendant.**

**No. 17278.**

United States District Court
D. Colorado.

June 3, 1964.

**490**

Lawrence M. Henry, U. S. Atty., and James A. Clark, Asst. U. S. Atty., for plaintiff.

Robert T. Kingsley, and Albert B. Wolf, Denver, Colo., for defendant.

CHRISTENSEN, District Judge.

The Secretary of the Treasury has issued regulations,[1] which by authority of the Trading with the Enemy Act,[2] provide (so far as material here) in effect that unless authorized by the Secretary of the Treasury or his delegates no person subject to the jurisdiction of the United States may purchase, transport, import, or otherwise deal in or engage in any transaction with respect to any merchandise outside the United States if such merchandise is (1) merchandise the country of origin of which is "China (except Formosa) or North Korea" (with various exceptions); (2) "Antiques, Chinese type" (with various exceptions and with many other inclusions), or (3) "Chinaware, other than Dresdenware and Meissenware" or "Earthenware" " * * * howsoever processed, if such merchandise is or has been located in or transported from or through Hong Kong, Macao, or any country not in the authorized trade area" (with many other inclusions).

An indictment, under attack by defendant's motion to dismiss, charges (the sufficiency of other essential allegations being assumed for the purposes of this decision):

In Count 1 that the defendant unlawfully, wilfully and knowingly dealt and engaged in transactions "with respect to certain merchandise outside the United States, the country of origin of which was China, to wit, certain Chinese antiques and objects of art. * * *"

In Count 2, that the defendant unlawfully, wilfully and knowingly dealt and engaged in transactions "in respect to certain merchandise, outside the United States, the country of origin of which was China, to wit, certain bowls, paint pots, ginger jars and wine cups. * *"

In Count 3, that the defendant unlawfully, wilfully and knowingly dealt and engaged in transactions "with respect to certain merchandise, outside of the United States, the country of origin of which was China, to wit, Chinese antiques and objects of art. * * *"

█ It is not sufficient to charge as vital parts of the indictment 1 that the dealings were with respect to merchandise "the country of origin of which was China" when the regulations interdicted transactions involving merchandise "the country of origin of which is China (except Formosa) or North Korea." This is not a case where the exception is merely a matter of defense, but one where the exception is an integral part of the very definition of the offense.[3] If the country of origin had been Formosa, the geographical coverage of the prohibition simply would not apply, any more than a prohibition of an act committed "in Indian country" would be applicable to an act which may have been committed outside of Indian country.

While the gist of the indictment appears to relate to the phrase last discuss-

1. 31 C.F.R., Section 500.204(a) (1–4).

2. 50 U.S.C.A.App. § 5(b).

3. See McKelvey v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301 (1922);

United States v. Britton, 107 U.S. 655, 2 S.Ct. 512, 27 L.Ed. 520 (1883); Nicoli v. Briggs, 10th Cir., 83 F.2d 375 (1936); United States v. Guterma, D.C.S.D.N.Y., 189 F.Supp. 265 (1960).

ed, I have considered whether other allegations invoke additional prohibitions in the regulations, which might yet afford validity to the charges.

For the purpose of discussing the last mentioned possibility we shall assume that, irrespective of the country of origin, a charge with respect to "antiques, Chinese Type" in Counts 1 and 3 would be sufficient, and with respect to "Chinaware" in Count 2 would be sufficient. The question then is whether "Chinese Antiques" and "bowls, paint pots, ginger jars and wine cups", the corresponding expressions actually used in Counts 1 and 3 and in Count 2, respectively, of the Indictment, may be taken to mean the same things.

At first look it may appear that they do. Chinese Type Antiques might mean the same as, or may be even broader than, "Chinese Antiques" and thus comprehend at least those antiques intended by the regulation. "Chinaware" may often include bowls, paint pots, ginger jars, wine cups and similar items. Yet such items may not be, and often are not, chinaware; and antiques "Chinese Type" may in the intent of the Secretary of the Treasury have had a peculiar meaning, involving both the intrinsic nature of the antique as well as its country of origin, that "Chinese Antiques" could not wholly cover. Chinese Antiques may connote ownership by Chinese nationals, which would not necessarily be true of antiques, Chinese Type. And why in the indictment is there added "and objects of art" to the expression "Chinese Antiques"? Is the addition meant to change the meaning of the language used in the regulation? Is an addition or a qualification intended? There would seem to be quite enough uncertainties in the regulation without engrafting others gratuitously.

■ If the language of the regulation had been utilized in the indictment this court would not be concerned with possible variations between the intent of the Secretary and that of the pleader, for identity of intent will be presumed from identity of language. An unwarranted variation in language usually poses questions. Where, as here, there are three key expressions in the indictment all of which involve substantial variation from the regulations, the inquiry changes from merely an academic one to be resolved by theoretical speculation into real difficulty to ascertain what purpose there might be, and what consequences may arise from this seemingly studied disparity.

■ The defendant contends that the regulations go beyond, and are not authorized by, the statute on which they purport to be based. It may well be that the more broad prohibitions of the regulations, coupled with the power on the part of the administrative agency to authorize exceptions within the purposes of the statute, constitute practical, and thus sustainable, means to achieve the objectives of the statute. It is unnecessary for me, however, to rule upon this point, and I refrain from doing so in deference to the presumed validity of administrative regulations, since in my judgment the indictment is insufficient on other grounds. Yet this very problem emphasizes the proliferant uncertainty in the allegations confronting the defendant.

Except for general objectives, the somewhat vague and general language of the regulation—"antiques, Chinese Type", and "Chinaware"—is not clarified by the statute. Thus, upon the uncertainty and generality of the statute, we have imposed the further uncertainty and generality of the regulations.

■■ Upon this compounded uncertainty, the indictment without apparent purpose or reason superimposes still another trifurcate disparity. Under the circumstances I deem this to be unjustified, to be substantial and real, and to be one which raises such question, if not disclosing such hiatus as to encroach upon the defendant's right to be informed of the nature and cause of the accusa-

tion against him, and to have this done in plain, concise and definite language.[4]

For the reason stated, I am of the opinion that the indictment should be, and it is hereby, dismissed. Other questions raised by the defendant need not be resolved in view of this disposition.

4. U.S. Constitution, Amdt. 6; Rule 7(c) F.R.Cr.P., 18 U.S.C.A.; Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Meer v. United States, 10th Cir., 235 F.2d 65 (1956); United States v. Simplot, D.C.D.Utah, 192 F.Supp. 734 (1961).